## STREAMS *v.* STATE

[No. 237, September Term, 1964.]

*Decided April 5, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, OPPENHEIMER and BARNES, JJ.

*Joseph G. Koutz* for appellant.

*Robert J. Martineau, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General,* and *Charles E. Moy-
lan, Jr., State's Attorney for Baltimore City,* on the brief, for
appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Streams, seeks to reverse five convictions of
robbery by Judge Harlan, sitting without a jury, for which he
was sentenced to a total of nineteen years' imprisonment.

He claims on appeal, as he did below, that two confessions
the State claims he made should not have been received in evi-
dence because the State did not meet its burden of proving the
chain of police custody prior to the making of the confessions
and because the confessions were induced by promises and
threats.

The prosecution proved the corpus delicti in each case by the
testimony of the victim and then implicated the appellant solely
by his confessions. Sergeant Tabeling, the only police witness,
testified that Streams was arrested, without a warrant, at his
home just after midnight on Wednesday, February 26, 1964,
by Officer Vernon Barclay, taken to Central Police Station and
put in a cell, where he remained until eight-forty a.m. when
the interrogation began. It continued with interruptions until
after four that afternoon, when Streams gave a confession which
was reduced to writing and signed by him. On Friday, Feb-
ruary 28, Streams made another confession, which he also

signed. Sergeant Tabeling said he himself did all the interrogating both on Wednesday and Friday, and that there was no mistreatment of Streams, and that he was not in any way threatened or induced in the obtention of the confessions.

Thereafter Streams, testifying as to the confessions, stated the following: that he was eighteen years old, had gone to the eighth grade in school, but could not read and could write only his name; that three police officers came to his home on Tuesday night while he was in bed and informed him they wanted to question him and were going to take him to the station house and bring him back after he had answered the questions; and one of the officers questioned him during the drive to the police station.

He then testified that the next morning, and also on Friday, Officer Butler questioned him, as well as Sergeant Tabeling, who was present when Officer Butler did his questioning. Streams says he was told it would be better for him if he made a statement because if he did they would try to get him put on probation. He then says Officer Butler told him if he did not sign a statement "* * * he'd throw the book at me, get me more time, that's all."

Neither Officer Butler nor Officer Barclay, an arresting officer who was in court, nor any other witness was called in rebuttal by the State.

We think the State did not meet its burden of showing that the confessions were freely and voluntarily made and were not products of promises or threats. Sergeant Tabeling's testimony that during all of the interrogations he and Officer Butler were the only officers present and that neither he nor anyone in his presence made any threats or promises to get Streams to give any information, and similarly no immunity or inducements were offered or held out to him, might have been enough if there were no later uncontradicted contentions to the contrary, and if Streams had not admittedly been in the custody of other officers who, he says, made statements to him and questioned him. We do not agree with the appellant's contention that each person who has casual contact with the accused while he is detained by the police or who is present during the interroga-

tions that lead to a confession must testify as to its voluntariness in order for the State to meet its burden. *Bagley v. State,* 232 Md. 86; *Glaros v. State,* 223 Md. 272; *Glover v. State,* 202 Md. 522; *Cooper v. State,* 205 Md. 162; *Jackson v. State,* 209 Md. 390. It may be enough if one credible witness can testify from personal observation that nothing was said or done prior to and during the obtention of the confession to mar or destroy its voluntary character and there is no claim by the prisoner of improper treatment by others than those covered by such testimony. As was pointed out in *Bagley* (p. 93-94 of 232 Md.) :

> "It was said in *Jackson v. State,* 209 Md. 390, 121 A. 2d 242 (1956), that in practice the State *almost invariably* undertakes to prove the free and voluntary character of a confession by calling 'all persons who had the prisoner in charge,' but that is not to say that the statement should be accepted as having established a mandatory rule which *must b*e followed in every case."

In the case at bar we think the State failed in its obligation to show preliminarily that the confessions were voluntary by not calling any of the three officers who arrested Streams and in not calling either Sergeant Tabeling or Officer Butler to refute, if they properly could, Streams' charge of promises as to probation and threats of long sentences. *Mercer v. State,* 237 Md. 479.

The promise to bring Streams home after questioning him, which he says the arresting police told him they would do, might well have led him, in light of his age and his apparent lack of mental capacity, to the conclusion that the sooner he told the police what they wanted him to tell, the sooner he would be returned to his home. The State offered no refutation of that promise; neither did it reveal to the court what the arresting officers said or did not say or do or not do to Streams while he was in their custody.

After Streams testified, the State chose not to refute his claim that he was promised official help in getting probation if he confessed—which to him could have been fully consistent with and have buttressed the statement he would be taken home

283

after being questioned—nor did it then choose to specifically deny his claim that Officer Butler threatened him with long sentences if he did not confess.

We think the State's failure, after Streams left the stand, to go forward with testimony which would refute his claim of promises and threats and to show the conduct of the police during the period he was in custody of the arresting officers was enough under the circumstances of this case to require a holding that the judgments appealed from must be reversed because the State did not meet its burden of establishing the voluntariness of the confessions as a prerequisite to their admission in evidence.

The appellant argues secondarily that regardless of voluntariness in fact, the confessions were inadmissible because made while in police custody after an illegal arrest. The record suggests that the arrest was illegal but there is not enough before us on the point to permit a ruling either way. If it be assumed that the arrest was illegal the appellant is not helped. We have held consistently that the mere fact that a confession is given after an illegal arrest does not make it inadmissible. *Dailey v. State,* 234 Md. 325, and cases cited; *Anderson v. State,* 237 Md. 45, 49.

> *Judgments reversed and cases remanded for new trials, costs to be paid by the mayor and city council of Baltimore.*