JOHN PAUL JARRELL AND ROBERT THOMAS
HOPPER *v.* STATE OF MARYLAND

[No. 663, September Term, 1976.]

*Decided June 9, 1977.*

The cause was argued before MORTON, POWERS and MASON, JJ.

*Robert Paul Mann* for appellants.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Jeffrey N. Himmelstein, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellants, John Paul Jarrell and Robert Thomas Hopper, were convicted at a bench trial in the Circuit Court for Baltimore County of possession with intent to distribute a controlled dangerous substance (two counts) and of maintaining a premises for the purpose of storing, concealing or dispensing a controlled dangerous substance. Jarrell was sentenced to two concurrent five-year terms for possession with intent to distribute and a concurrent two-year term for maintaining a common nuisance. Hopper was sentenced to two concurrent two-year terms for possession with intent to distribute and a concurrent two-year term for maintaining a common nuisance.

On appeal both appellants challenge the legality of the seizure of the contraband from Jarrell's automobile and residence.[1]

In January of 1975, Detective Leo Matrangola of the Baltimore County Police Department received information from an informant that the appellants were in partnership,

---

1. Although not raised below or on appeal, Appellant Hopper has automatic standing to challenge the legality of the seizure of contraband from Jarrell's residence. *See* Duncan and Smith v. State, 276 Md. 715 (1976). In addition, there is sufficient evidence in the record to establish that Hopper resided at Jarrell's house.

selling large quantities of marijuana in five, ten and fifteen pound lots. Subsequently, a surveillance of the Jarrell residence was initiated.

On 27 February 1975 at approximately 6:20 p.m., Detective Matrangola left his surveillance post and met the informant at a predesignated location where the informant advised him that within the past twenty-four hours he had been inside the Jarrell residence and had observed a quantity of marijuana in cardboard containers and duffle bags. He further advised the officer that he had overheard a conversation wherein the appellants discussed a sale of marijuana which was to take place within the next two hours.

Upon returning to the surveillance area at approximately 7:10 p.m., Matrangola observed Jarrell carry a duffle bag from his house and hand it to Hopper. Then Jarrell, together with Hopper and another man, later identified as Robert Reynolds, drove away in Jarrell's brown Dodge Challenger. As the vehicle left, Matrangola contacted Detective Roland Long by radio, gave a description of the car and advised Long that the occupants were violating the narcotic laws. Detective Long stopped the vehicle and arrested all three men. In searching the car, police found a duffle bag containing approximately ten pounds of marijuana.

### Search of Jarrell's Automobile

In order to justify the warrantless search of the appellant's automobile, under the so-called automobile exception, *Carroll v. United States*, 267 U. S. 132 (1925), probable cause and exigent circumstances must be established. *Soles v. State*, 16 Md. App. 656 (1973). In addition, when using an informant to show probable cause, such as here, it must be demonstrated that he was credible, his information reliable, and he possessed a sufficient basis of knowledge. *Aguilar v. Texas*, 378 U. S. 108 (1964); *Spinelli v. United States*, 393 U. S. 410 (1969).

An informant's credibility can be established by showing receipt of present or past reliable information. *Stanley v. State*, 19 Md. App. 507, *cert. denied*, 271 Md. 745 (1974). As

to the informant's credibility in this case, Detective Matrangola testified that the informant had previously supplied him with vital information resulting in eleven arrests; two of which resulted in convictions, while the other nine cases are pending.

With respect to the informant's basis of knowledge, the Court in *Stanley v. State, supra,* said:

> The "basis of knowledge" prong assumes an informant's "veracity", and then proceeds to probe and test his conclusion: ("What are the raw facts upon which the informant based his conclusion?" "How did the informant obtain those facts?" "What precisely did he see or hear or smell or touch firsthand?" . . .). *Id.* at 531.

Here the informant supplied the police with firsthand information. He stated he was in Jarrell's house within the past twenty-four hours, observed marijuana in duffle bags and cardboard containers, and overheard the plans for the sale of marijuana.

As to exigent circumstances, the informant here told the police that within the "next two hours" a drug sale would occur. Soon thereafter the appellants were observed driving off in Jarrell's vehicle with a duffle bag which the informant had indicated contained marijuana. It is clear the police were faced with exigent circumstances demanding immediate action. *See Soles v. State, supra, Peterson, Deal and Hunt v. State,* 15 Md. App. 478 (1972). Under these circumstances, we conclude there was sufficient probable cause and exigent circumstances to justify the warrantless search of Jarrell's car and the seizure of the marijuana.

### Search of Jarrell's Residence

When Detective Matrangola arrived at the police station, Jarrell was in an interview room with Detective William Dugan and Sergeant Edward Smith. During the course of the interview, Matrangola gave Jarrell his Miranda warnings, informed him that his residence had been secured by placing two officers in the front of the house and two

officers in the rear, and asked him if they could search his house. Jarrell agreed to give the police permission to search his house and signed a consent to search form in the presence of Matrangola and Dugan. Sergeant Smith, however, had left the room prior to Jarrell signing this form. In searching the house, approximately twenty-two pounds of marijuana, narcotic paraphernalia, and $6,900 were found.

At the suppression hearing, the following testimony was elicited by defense counsel regarding Jarrell's consent to search his residence:

> Q. Why did you sign the waiver of consent to search?
>
> A. I had no choice.
>
> * * *
>
> Q. You had no choice? Why didn't you have a choice?
>
> A. Because they were using Reynolds —
>
> THE COURT: . . . Tell us what happened.
>
> A. . . . I went into a little hearing room, whatever kind of room it is, and Officer Smith indicated that he knew how serious Mr. Reynolds' health was, and he didn't look good. And I told Smitty [Sergeant Smith] that he was a very sick man. And Smitty kept saying, well, I'll tell you what I'll do. If you agree to sign for a search of your home and your car we'll let Mr. Reynolds go;[2] if you don't sign we are going to leave him in jail.
>
> THE COURT: Is that the reason you signed?
>
> A. Yes.
>
> * * *

Later, defense counsel attempted to call Sergeant Smith to the stand. The trial court, however, refused and said:

> THE COURT: You should have prepared for it before your hearing this morning. This matter was

---

2. Reynolds was subsequently released without explanation.

assigned for this morning. I am not going to hang around until 4:30, 5, 6 o'clock tonight.

DEFENSE COUNSEL: I am sure the man [Sergeant Smith] could be gotten here within the hour; without any question, immediately after lunch.

THE COURT: No, sir.

DEFENSE COUNSEL: Then we have uncontradicted testimony on the part of my client as to the voluntariness of this.

\* \* \*

Defense counsel also attempted, unsuccessfully, to call as a witness Detective Dugan who was in the interview room with Sergeant Smith before Matrangola arrived.

Inexplicably, the State made no effort to call Sergeant Smith or Detective Dugan to rebut the testimony of Jarrell. The court, in denying that part of the motion to suppress the evidence seized from Jarrell's residence, stated:

We arrive now at the question of the search of the house. It is fully admitted that the Defendant, Jarrell, who had the right to occupy the house, signed a consent. No one has raised the question as to whether or not Hopper had any right to object to the search of the house. Under the view I take of the case, I do not find it necessary to make any determination in that regard.

Mr. Jarrell said that he was emotionally upset because his friend, Mr. Reynolds, was sick, and that Sergeant Smith told him that if he would sign it, that they would let Mr. Reynolds go. The whole evidence before me, even on Mr. Jarrell's testimony, is that Sergeant Smith had left the premises — and by premises I mean the interview room or interrogation room, or whatever you wish to call it — had left that room prior to Detective Matrangola reading to Mr. Jarrell his rights under Miranda, which may or may not have been read to him, I think from the evidence they were, but it makes no difference. But Smith is gone. Matrangola reads the

Miranda rights to Mr. Jarrell. He tells Mr. Jarrell that they have the house secured. Mr. Jarrell I would say, from the fact that the testimony before me is that he is a known prior convicted offender in narcotic activities, Mr. Jarrell is ringwise. Mr. Jarrell is fully conscious of the fact that if they have the house secured, that they can keep it secured, and have plenty of time to prepare an application for a search warrant and a supporting affidavit thereto, find a judge, and go search this secured house. That, in my opinion, is why Mr. Jarrell signed the consent order.

And it is my opinion, and I find as a fact, gentlemen, that Mr. Jarrell was not emotionally upset, was not so concerned that he signed the consent warrant because of his worry over his friend, Mr. Reynolds. I find as a fact, because I am entitled to draw these inferences as a finder of the facts, I find as a fact that Mr. Jarrell, being ringwise, being in the situation he was there in, believing that he was caught redhanded, threw up his hands, and said to himself, I might as well sign it, they are going to get a search warrant anyway. So that I find as a fact the consent was free, voluntary, and given by a person who was completely informed of his rights, who well knew his rights, who had been through criminal prosecutions prior to this occasion relative to controlled dangerous substances, and that it was not induced by anything involving him emotionally or psychologically or through any coercion promise, or anything of that kind. I think that he did it knowingly, willingly, and intentionally, and being fully advised of his rights. The motion, gentlemen, will be denied as to both the automobile and the house.

In *Schneckloth v. Bustamonte*, 412 U. S. 218, 227 (1973), the Supreme Court made it clear that a warrantless search based on consent must be voluntary.

... whether a consent to a search was in fact

"voluntary" or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all the circumstances.

*Accord Johnson v. State*, 30 Md. App. 280 (1976); *Wilson v. State*, 30 Md. App. 242 (1976); *Whitman v. State*, 25 Md. App. 428 (1975); *Lopata v. State*, 18 Md. App. 451 (1973).

The same test, i.e., the "totality of the circumstances" has also been used over the years in determining the voluntariness of a confession.

"The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an ·essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." . . .

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances — both the characteristics of the accused .and the details of the interrogation. (Citation omitted). *Schneckloth v. Bustamonte*, 412 U. S. 218, 225-226.

In the present case at the time the appellant consented to the search of his home, the psychological environment was suggestive of coerced consent. Jarrell was in custody; he was informed that his home had been "secured"; and he was promised, according to his uncontradicted testimony, that Reynolds would be released if he consented to the search.

In *Streams v. State*, 238 Md. 278 (1965), the accused testified that the arresting officer promised to bring him back home after he answered certain questions, that one of the officers said he would try to get him put on probation if he made a statement, and that another officer said if he did

not sign the statement he would throw the book at him and get him more time. There was no refutation of the accused's testimony. The Court of Appeals held:

> We think the State's failure, after Streams left the stand, to go forward with testimony which would refute his claim of promises and threats and to show the conduct of the police during the period he was in custody of the arresting officers was enough under the circumstances of this case to require a holding that the judgments appealed from must be reversed because the State did not meet its burden of establishing the voluntariness of the confessions as a prerequisite to their admission in evidence. *Id.* at 283.

See also *Gill v. State*, 265 Md. 350, 353-354 (1972), where the Court of Appeals held:

> But when it is contended that someone employed coercive tactics to obtain inculpatory statements, the charge must be rebutted. Here it is claimed the inducement occurred while Gill was alone with [Detective] Hyson. Since it is uncontradicted that the suspect was in fact in the sole presence of this police interrogator, that specific person must rebut the allegations of coercion as no one else is qualified to do so . . . . From the facts of this case it is readily apparent that since Hyson did not testify the State failed to meet its burden of establishing the confession was voluntary. (Citations omitted).

In the present case, once the accusation was made that Sergeant Smith had promised to release Reynolds if Jarrell would consent to the search of his house, this charge should have been specifically refuted. The fact that the court below did not believe Jarrell consented to the search because of his concern for Reynolds did not relieve the State of its obligation to refute, if it could, Jarrell's allegations. Although we are concerned here with the voluntariness of a consent as opposed to the voluntariness of a confession, a result contrary to *Streams, supra* and *Gill, supra,* is not dictated. The test for determining voluntariness of each is the same, i.e., the totality of the circumstances.

Another factor suggestive of coercion in the instant case was the police combining the request for permission to search with the statement to Jarrell that his house was secured, to wit: two policemen were in the front of the house and two were in the rear. We think this statement coupled with the request to search was calculated to persuade Jarrell that the search was inevitable, with or without his consent. In fact, the lower court, in its opinion, said: "I find as a fact that Mr. Jarrell, being ringwise, being in the situation he was there in, believing that he was caught redhanded, threw up his hands and said to himself, I might as well sign it, they are going to get a search warrant anyway."

In *Whitman v. State, supra,* at 456, this Court held that "police representations that the issuance of a warrant will be practically automatic" combined with other factors were inherently coercive and the arrestee's consent to a search was lacking in voluntariness under the "totality of the circumstances". We think this rationale is apposite here.

From our independent, constitutional review, we conclude that the coercive factors in this case rendered the appellant's consent involuntary within the meaning of *Schneckloth v. Bustamonte, supra.*

> *Judgments as to count one of Criminal Information #51679 (possession with intent to distribute a controlled dangerous substance) affirmed.*
>
> *Judgments as to counts one and five of Criminal Information #51678 (possession with intent to distribute a controlled dangerous substance) and (maintaining a premises for the purpose of storing, concealing or dispensing a controlled dangerous substance) reversed.*
>
> *Costs to be divided equally between appellants and Baltimore County.*