706 A.2d 613

**Timothy Bryan CHASE**

v.

**STATE of Maryland.**

**No. 865, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

March 2, 1998.

142

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen., Davis J. Taube, Staff Atty., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Jerry F. Barnes, State's Atty. for Carroll County, Westminster, on the brief), for appellee.

Submitted before HOLLANDER and SALMON, JJ., and PAUL E. ALPERT, Judge, (retired), Specially Assigned.

PAUL E. ALPERT, Judge (retired), Specially Assigned.

A jury sitting in the Circuit Court for Carroll County [1] convicted appellant, Timothy Bryan Chase, of first degree rape, first degree sexual offense, kidnaping, robbery, and related offenses. The court then sentenced appellant to life

---

1. At appellant's request, his trial was removed to the Circuit Court for Carroll County from the Circuit Court for Howard County.

imprisonment, and concurrent terms of 35 years, 25 years, 25 years, 25 years, and seven years.

## ISSUES

Appellant raises five issues, which we reorder and rephrase:

I.   May the State use evidence otherwise protected by the marital communication privilege, codified in Md. Code § 9–105 (1995 Repl.Vol.) of the Courts and Judicial Proceedings Article, in a determination of whether it has probable cause for an arrest or a search?

II.  Did the circuit court err when it ruled that the police had consent to enter appellant's home when they arrested him?

III. Did the circuit court err when it allowed the victim to make an in-court identification of appellant?

IV.  Did the circuit court err when it allowed DNA evidence obtained through the PCR technique to be use to identify appellant?

V.   Were there exigent circumstances which justified the entry of appellant's home by the police during his arrest?

## FACTS

On March 20, 1996, a man fitting appellant's physical description abducted two sisters of Indian descent-one age fifteen, and the other age seven-and took them to a vacant wooded area in Howard County. Once there, he forced the younger girl to remove her shirt and lie on the ground, and the older one to take off all of her clothes. He proceeded to rape the older girl, and then took from her two gold rings, several earrings, and some loose pocket change. The assailant subsequently released both girls, who immediately reported the incident to the authorities.

A few days later, a woman called the Howard County Police Department to report a conversation she had had with her

cousin, in which the cousin said that her husband had come home one night with jewelry he claimed to have stolen from two young girls. The police immediately contacted the cousin, Vanessa Chase, wife of appellant. Mrs. Chase told the police that several nights earlier, appellant had come home with mud on his jacket and jewelry he said he had stolen from two girls of Indian descent. She also identified a composite drawing of the assailant as her husband, and gave the police one of the earrings appellant had brought home. Shortly thereafter, the earring was brought to one of the victims, who positively identified it.

The police subsequently decided to make a warrantless arrest of appellant at his home because they feared that he would learn of their investigation and destroy evidence. Accordingly, shortly after the victim's positive identification of the earring, the police went to appellant's home and arrested him. The police then obtained and executed a search warrant for appellant's home.

## DISCUSSION

### I. Use of Evidence Protected by Marital Privilege

The Howard County Police decided that they had probable cause to arrest appellant based on the following information: Mrs. Chase's statement that appellant had come home several nights earlier with mud on his jacket and an assortment of jewelry; Mrs. Chase's statement that appellant had told her that he stole the jewelry from two girls of Indian descent; Mrs. Chase's identification of the composite drawing of the assailant as appellant; and the positive identification, by one of the victims, of an earring given to the police by Mrs. Chase.

Prior to trial, appellant moved to suppress the earring obtained by the police from Mrs. Chase on the ground that it was part of a confidential marital communication protected by Md.Code, § 9–105 (1995 Repl.Vol.) of the Courts and Judicial Proceedings Article. The circuit court rejected this argument on the ground that the transmission of the earring from

appellant to Mrs. Chase did not constitute a confidential communication within the meaning of § 9–105.[2]

In this appeal, appellant changes his argument somewhat. Appellant points out that the police relied not just on the earring, but also on the statement by appellant to Mrs. Chase that he had taken the jewelry from two young girls. Appellant argues that that statement was privileged under § 9–105, and that the police were therefore not entitled to rely on it in their probable cause assessment. According to appellant, in the absence of that statement, the police did not have probable cause to either arrest him or search his house. Thus, appellant argues that all of the evidence obtained during his arrest and the subsequent search of his house should have been suppressed.

■ We do not read § 9–105 to prohibit the use of privileged marital communications in a probable cause determination. Accordingly, we reject appellant's argument.

Section 9–105 reads as follows:

**§ 9–105. Testimony by spouses—Confidential communications occurring during marriage.**

One spouse is not competent to disclose any confidential communication between the spouses occurring during their marriage.

It is read in conjunction with § 9–106, which provides:

**§ 9–106. Same—Spouse of person charged with a crime.**

The spouse of a person on trial for a crime may not be compelled to testify as an adverse witness unless the charge involves:

(1) The abuse of a child under 18; or

(2) Assault and battery in which the spouse is a victim if:

(i) The person on trial was charged with assault and battery of the spouse within 1 year of the current charge;

---

2. We need not determine whether transmission of the earring constituted communication, but even if we did so, for reasons set forth *infra,* appellant still would not prevail.

(ii) The spouse was sworn to testify at the previous trial; and

(iii) The spouse refused to testify on the basis of the provisions of this section.

An interpretation of these provisions, like an interpretation of any statute, requires that we effectuate the intent of the legislature. *State v. Ghajari*, 346 Md. 101, 115, 695 A.2d 143 (1997). The starting point for such an analysis, as the State correctly points out, "is the language of the statute, read in its entirety and in the context of the statutory scheme." *In re Roger S.*, 338 Md. 385, 390, 658 A.2d 696 (1995).

■ Applying these principles to the case at bar, it is clear that §§ 9–105 and 9–106 apply only to witnesses in judicial proceedings, and not to police investigations of criminal activity. This interpretation is supported by the fact that these two provisions are located in Title 9, which governs witnesses in judicial proceedings.

Our interpretation of §§ 9–105 and 9–106 is also strongly supported by the ruling of the Court of Appeals in *State v. Mazzone*, 336 Md. 379, 648 A.2d 978 (1994). There, one of the primary issues was whether § 9–105 prohibits the State from eavesdropping and intercepting confidential communications between spouses. The Court ruled that § 9–105 only "concerns the competency of spouses to testify as to marital communications; it does not prohibit or even mention eavesdropping." *Id.* at 389, 648 A.2d 978. The Court also noted that any attempt to broaden the reach of § 9–105 beyond the context of a judicial proceeding must be effectuated by the legislature, and not the courts. *Id.*

Our interpretation of § 9–105 is also supported by non-Maryland cases addressing the issue presented in this case. Those jurisdictions with marital privileges that clearly apply only to judicial proceedings have held that police may rely on otherwise privileged communications in probable cause determinations. For example, in *State v. Jaschik*, 85 Ohio App.3d 589, 620 N.E.2d 883 (11 Dist.), *jurisdictional motion overruled*, 67 Ohio St.3d 1450, 619 N.E.2d 419 (1993), the applica-

ble statute provided that "[h]usband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence of a third person competent to be a witness * * *." The court held that that statute was not violated by the use of otherwise privileged communications to develop the probable cause necessary for a search warrant. 620 N.E.2d at 890. *See also United States v. Harper,* 450 F.2d 1032, 1045–46 (5th Cir.1971).

Further, even in jurisdictions where the language of the statutory spousal privilege is broad enough to encompass non-judicial proceedings, courts have uniformly rejected an application of that privilege to probable cause determinations. For example, in *State v. Farber,* 314 N.W.2d 365 (Iowa 1982), the applicable statute applied the marital privilege, somewhat ambiguously, to a "case"; it read, in relevant part: "Neither the husband nor the wife shall in any case be a witness against the other...." The court noted that the statute had been applied in grand jury proceedings, but then distinguished grand jury proceedings from search warrant proceedings:

> The issue in a grand jury inquiry is much different than in a search warrant proceeding. It concerns the sufficiency of the evidence to indict rather than sufficiency of evidence to conduct a search. An indictment is a prelude to a trial, whereas a search is investigatory. In addition, the potential compulsion of a subpoena is present in the grand jury setting but is unlikely to be involved in issuance of a search warrant.

*Id.* at 367. The court then refused to extend the statutory privilege to a probable cause determination, holding that "the proceeding on a search warrant application is not a 'case' within the meaning of [the applicable statute]." *Id.*

Similarly, in *People v. Kemp,* 59 A.D.2d 414, 399 N.Y.S.2d 879 (1977), the applicable statute provided as follows:

> (b) Confidential communication privileged. A husband or wife shall not be required, or, without consent of the other if

living, allowed, to disclose a confidential communication made by one to the other during marriage.

The court held that this privilege did not prevent the police from relying on otherwise privileged communications in making a probable cause determination. *Id.* 399 N.Y.S.2d at 883.

The only case cited to us (and the only one which we have been able to find) in which a court has held that information protected by the marital communication privilege may not be used to obtain a search warrant is *Muetze v. State*, 73 Wis.2d 117, 243 N.W.2d 393, 399 (1976). In that case, however, the applicable statute mandated that the privilege apply "at all stages of all actions, cases and proceedings . . . " *Id.* 243 N.W.2d at 397. Therefore, *Muetze* is clearly distinguishable from both this case and the non-Maryland cases cited above.

To conclude, we hold that evidence otherwise privileged under § 9–105 of the Courts and Judicial Proceedings Article may be used by the police in determining whether they have probable cause for an arrest or a search. Accordingly, the evidence obtained during appellant's arrest and during the search of his house was properly admitted at trial.

## II.   Voluntariness of Police Entry

At the suppression hearing, appellant also argued that his arrest was illegal because the police did not have either a warrant or consent to enter his house and apprehend him. The circuit court rejected appellant's argument, holding that the police had consent to enter his house. Appellant now argues that the circuit court's determination of consent was in error. We disagree.

In reviewing such a determination by a trial court, we make our "own independent constitutional appraisal, by reviewing the law and applying it to the peculiar facts of the particular case." *Jones v. State*, 343 Md. 448, 457, 682 A.2d 248 (1996). A trial court's factual findings must be accepted unless clearly erroneous, and all of the evidence is viewed in the light most favorable to the party which prevailed at the suppression hearing (in this case, the State). *Id.* at 458, 682

A.2d 248.  Whether consent for a search or entry was voluntarily given is generally a question of fact.  *McMillian v. State,* 325 Md. 272, 285, 600 A.2d 430 (1992).

Here, there was a dispute over the circumstances surrounding the entry of appellant's house by the police.  Sergeant Stanley Proudlock and Sergeant Kenneth Fleishman both testified to the following:  that they knocked on the door of appellant's home, and Mrs. Chase answered; that they asked her if her husband was home, and said they needed to speak with him;  that Mrs. Chase, upon hearing their request, opened the door wider and stepped out of the doorway;  and that once Mrs. Chase stepped out of the way, they entered the house and arrested appellant.  Mrs. Chase, by contrast, testified that Sergeants Proudlock and Fleishman both entered the house as soon as she opened the door, and did not introduce themselves or announce their purpose.

The circuit court chose to believe the policemen's version of events.  In light of their testimony, the relevant factual findings of the circuit court are not clearly erroneous.

■  Because we are obligated to accept the version of events related by Sergeants Proudlock and Fleishman, we must answer the following question:  did the action of Mrs. Chase in opening the door wider and standing back once the officers announced their intentions constitute consent to enter the house?  We believe that it did.

In this respect, this case, as the State notes, is very similar to *In re Anthony F.,* 293 Md. 146, 442 A.2d 975 (1982).  There, two police officers specifically asked the sister of the defendant whether they could enter her home and talk to her brother, and she "responded by stepping back and opening the door wide so they could enter."  *Id.* at 148, 442 A.2d 975.  The Court of Appeals ruled that this action constituted a voluntary invitation to enter the house.

Appellant seeks to distinguish *Anthony F.* by pointing out that in this case, the police did not ask to speak to appellant; rather, they simply told appellant's wife that they needed to speak to him.  Such a distinction is irrelevant.  A request to

speak to someone and an expression of need to speak to someone both convey the same message to the listener; and when the listener responds by opening a door wider and stepping out of the way, such an action clearly constitutes consent to enter.

Similarly, appellant's contention that the State's evidence was insufficient under *Streams v. State*, 238 Md. 278, 208 A.2d 614 (1965), is without merit. In *Streams*, the defendant produced evidence that his confession was coerced, and the State failed to rebut that evidence. Thus, the Court of Appeals held that the State had failed to meet its burden of establishing that the confessions were freely made. *Id.* at 283, 208 A.2d 614. Here, by contrast, the defendant's evidence-testimony by Mrs. Chase-was plainly contradicted by the testimony of Sergeants Proudlock and Fleishman. Further, the testimony of both officers was sufficient to satisfy the State's burden of showing that the entry of appellant's home was consensual.

### III. Validity of In–Court Identification

At trial, the State had the 15 year-old victim identify appellant during her testimony. Appellant now argues that that identification was unduly suggestive and thus violated his due process rights.

The State argues that appellant has not preserved this issue for our review because he did not posit a timely objection to the in-court identification. We do not address the State's preservation argument because even if the issue is preserved, the identification of appellant at trial clearly did not violate his due process rights.

In order to establish that an in-court identification of a defendant was a violation of the defendant's due process rights, that defendant must first demonstrate that the identification was unduly suggestive. If a defendant can demonstrate that an identification was unduly suggestive, the court reviewing his claim must then look to see whether the suggestiveness of the identification was sufficiently outweighed by factors of

reliability. The most important of these factors of reliability, set forth by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* at 199–200, 93 S.Ct. at 382. If the suggestive identification is sufficiently outweighed by these factors of reliability, then the identification is deemed to be valid.

Whether an in-court identification of a defendant is unduly suggestive is a matter of dispute among courts. Some courts have held that an in-court identification, because of the way the defendant is isolated at the counsel table, is inherently unfair, particularly when the witness has never identified the defendant before. *See United States v. Hill*, 967 F.2d 226, 232 (6th Cir.1992). Others, most notably this Court in *Green v. State*, 35 Md.App. 510, 520–21, 371 A.2d 1112 (1977), have rejected the notion that in-court identifications are unduly suggestive.

We are free here to accept or reject *Green*'s assessment of the suggestiveness of in-court identifications. We decline to do either, however, because even if such identifications are unduly suggestive, the identification in this case satisfied most of the reliability criteria set forth in *Neil v. Biggers*.

Here, the victim spent 15 to 30 minutes with the assailant, and during most of that time, the assailant was only a few inches away from her. Thus, the victim had a very good opportunity to view the criminal at the time of the crime.

Further, the victim's descriptions of the assailant were so accurate that Mrs. Chase recognized a composite drawing of that assailant (which was made based on the victim's description) as appellant. Thus, the witness's degree of attention was obviously very high, and her prior description of the criminal was very accurate.

Finally, the victim displayed little hesitation in identifying appellant at trial. Thus, her level of certainty in her identification was quite high.

In light of the presence of these factors of reliability, the victim's in-court identification of appellant did not violate his due process rights. Thus, the lower court did not err by allowing the identification.

## IV. Admission of DNA Evidence

■ Finally, appellant argues that the circuit court erred by admitting the DNA evidence in this case because that evidence was developed through polymerase chain reaction (PCR) techniques. According to appellant, at the time of trial, Md.Code, § 10–915(b) of the Courts and Judicial Proceedings Article only allowed DNA evidence developed through fragment length polymorphism (RFLP) analysis to be used to identify a defendant. We disagree.

■ As the Court of Appeals recognized in *Armstead v. State*, 342 Md. 38, 673 A.2d 221 (1996), § 10–915 essentially eliminates the need for a court to conduct an inquiry into the general acceptance of the DNA techniques listed therein. *Id.* at 66, 673 A.2d 221. Such an inquiry would otherwise be required pursuant to *Reed v. State*, 283 Md. 374, 381, 391 A.2d 364 (1978). *Id.* at 54, 673 A.2d 221. This, however, does not mean that DNA evidence not included in § 10–915 is inadmissible. It simply means that that evidence must be subjected to the inquiry outlined in *Reed* before it may be admitted.

Here, the circuit court conducted such an inquiry, and it ultimately concluded that PCR evidence is admissible. Thus, we perceive no error in the lower court's admission of that evidence.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY COSTS.**