IN THE CASE OF

UNITED STATES, Appellee

v.

Chad D. BENNER, Sergeant
U.S. Army, Appellant

No. 01-0827

Crim. App. No. 9801777

United States Court of Appeals for the Armed Forces

Argued April 4, 2002

Decided August 29, 2002

COX, S.J., delivered the opinion of the Court, in which GIERKE,
EFFRON, and BAKER, JJ., joined.  CRAWFORD, C.J., filed a
dissenting opinion.

<u>Counsel</u>

For Appellant:  <u>Frank J. Spinner</u> (argued); <u>Colonel Adele H.</u>
<u>Odegard</u> and <u>Major Imogene M. Jamison</u> (on brief).


For Appellee:  <u>Captain Karen J. Borgerding</u> (argued); <u>Colonel</u>
<u>Steven T. Salata</u> and <u>Major Margaret B. Baines</u> (on brief).


Military Judge:  Peter E. Brownback III


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

United States v. Benner, 01-0827/AR

Senior Judge COX delivered the opinion of the Court.

Appellant was convicted, pursuant to his conditional guilty pleas, of sodomy with a child and indecent acts, in violation of Articles 125 and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 925 and 934, respectively.[1]  The Court of Criminal Appeals affirmed.  55 MJ 621 (2001).

Prior to entering his pleas, appellant moved to suppress a confession given to special agents of the U.S. Army Criminal Investigation Command (CID).[2]  The issue in this appeal is whether this confession was voluntary.[3]  We hold that it was not

---

[1] Appellant was sentenced to reduction to Private E-1, forfeiture of all pay and allowances, six years' confinement, and a dishonorable discharge.  The convening authority reduced the sentence to confinement to five years, deferred the adjudged forfeitures, and waived the automatic forfeitures for the benefit of appellant's stepdaughter, in accordance with Article 58b, UCMJ, 10 USC § 858b.

[2] Appellant entered his plea conditionally, as provided in RCM 910(a)(2), Manual for Courts-Martial, United States (2000 ed.). All cited provisions of the Manual are unchanged from those in effect at the time of trial.

[3] We granted review of the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL
> ERROR WHEN HE DENIED APPELLANT'S MOTION TO
> SUPPRESS APPELLANT'S INVOLUNTARY CONFESSION THAT
> WAS GIVEN AFTER A CHAPLAIN IN WHOM APPELLANT
> CONFIDED UNDER MIL.R.EVID. 503 TOLD APPELLANT
> THAT IF HE DID NOT CONFESS TO LAW ENFORCEMENT
> AGENTS, THE CHAPLAIN WOULD DISCLOSE APPELLANT'S
> PRIVILEGED COMMUNICATIONS TO THOSE SAME AGENTS.

Argument was heard in this case at the Carey Theater, Fort Lewis, Washington, as part of this Court's Project Outreach. See United States v. Allen, 34 MJ 228, 229 n.1 (CMA 1992).

voluntary, and we reverse the decision of the Court of Criminal Appeals.

## FACTS

The facts of this case are unique and are set forth in full in the opinion of the Army Court of Criminal Appeals. 55 MJ at 622-23. For purposes of this appeal, we can summarize the facts as follows. In May of 1998, appellant engaged in an episode of indecent acts and sodomy upon his four-year-old stepdaughter while his wife was in the hospital in Germany. In June, the child first reported the acts to her grandmother, and then to her mother after she returned from the hospital. Appellant's wife confronted appellant, and he admitted the acts to her. No complaint was made to the military police or through command channels. Rather, in August, the grandmother removed the child from Germany to her home in the United States. Also, appellant's wife left him and returned to the states.

After the passage of some time and with the urging of his wife and mother-in-law, appellant decided to seek counseling from Chaplain (Captain) S. On September 20, 1998, at their first meeting, appellant was very emotional and confessed to the chaplain that he had engaged in an inappropriate relationship with his stepdaughter. At the conclusion of the meeting, the chaplain advised appellant that he might have to report the child abuse to the proper authority.

The following morning, the chaplain contacted the Army Family Advocacy office and was advised that he was required to report the child abuse. The chaplain related this to appellant. Appellant then confessed even more details about his conduct to the chaplain.

The chaplain told appellant it would be better for him to confess to the authorities on his own accord, and offered to go with him to the military police station. They discussed "the issue of forgiveness, of forgiving himself, [and] that [confessing] may be a step in helping him deal with that." Initially appellant was reluctant to go to the military police station. Chaplain S testified that, if he had not volunteered to go with appellant, he doubted that appellant would have made the report himself.

The chaplain escorted appellant to the Military Police (MP) station and told Sergeant First Class (SFC) K, the commander of the MP station, that appellant was at the MP station to make a statement regarding his "improper relationship with his stepdaughter." SFC K called CID, and about an hour later, two agents arrived. The CID agents warned appellant of his rights under the 5th Amendment, Article 31(b), UCMJ, 10 USC § 831(b), and Mil.R.Evid. 305(d), Manual for Courts-Martial, United States (2000 ed.). The agents did not give a "cleansing" warning regarding appellant's earlier confession to the chaplain.

4

United States v. Benner, 01-0827/AR

Appellant agreed to waive his rights and eventually gave a detailed, six-page, handwritten confession to CID.

THE LAW

When reviewing a decision of the Court of Criminal Appeals on a military judge's ruling, "we typically have pierced through that intermediate level," examined the military judge's ruling, and then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling. United States v. Siroky, 44 MJ 394, 399 (1996). At trial, the prosecution has the burden of establishing by a preponderance of the evidence that a confession was voluntary. Mil.R.Evid. 304(e)(1), Manual, supra; United States v. Bubonics, 45 MJ 93, 95, recon. denied, 46 MJ 186 (1996). We review de novo a military judge's determination that a confession is voluntary. United States v. Ford, 51 MJ 445, 451 (1999), citing Arizona v. Fulminante, 499 U.S. 279 (1991).

One of the most sacred privileges at common law was the confidentiality between a priest and penitent. "[It] recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." Trammel v. United States, 445 U.S. 40, 51 (1980). This privilege was recognized in paragraph 151(b)(2) of the 1951 Manual for Courts-Martial, United States, which provided:

5

> Also privileged are communications between a person subject to military law and a chaplain, priest, or clergyman of any denomination made in the relationship of penitent and chaplain, priest, or clergyman, either as a formal act of religion or concerning a matter of conscience.

When the Military Rules of Evidence were promulgated, Rule 503 expressly recognized a "[c]ommunications to clergy" privilege. It provides:

> A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman or to a clergyman's assistant, if such communication is made either as a formal act of religion or as a matter of conscience.

Manual, supra. Furthermore, this privilege is recognized in paragraph 4-4 of Army Regulation 165-1, Chaplain Activities in the United States Army (26 May 2000) (superseding 27 Feb. 1998), and paragraph 3-8 of Army Regulation 608-18, The Family Advocacy Program (1 September 1995).

Article 31(b), supra, provides:

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Additionally, a warning that the servicemember has a right to counsel is required. Mil.R.Evid. 305(d); United States v.

Tempia, 16 USCMA 629, 37 CMR 249 (1967).  Article 31(d)

provides:

> No statement obtained from any person in
> violation of this article, or through the use
> of coercion, unlawful influence, or unlawful
> inducement may be received in evidence
> against him in a trial by court-martial.

When a chaplain questions a penitent in a confidential and

clerical capacity, the results may not be used in a court-

martial because they are privileged.  Therefore, the Article

31(b) and Tempia warnings are not required.  Conversely, if a

military officer who is also a chaplain acts on the premise that

the penitent's disclosures are not privileged, then warnings are

required.

A confession that follows an earlier confession obtained

due to actual coercion, duress, or unlawful inducement is

presumptively tainted.  Ford, 51 MJ at 450-51, citing United

States v. Phillips, 32 MJ 76, 79 (1991), and applying the

analysis in Oregon v. Elstad, 470 U.S. 298 (1985).  However, a

confession taken in compliance with Article 31(b) and

Mil.R.Evid. 305 that follows an earlier unwarned confession

obtained in violation of Article 31(b) and Mil.R.Evid. 305 is

not presumptively tainted.  It is admissible if the subsequent

confession is determined to be voluntary "by the totality of the

circumstances."  Id.; see also Schneckloth v. Bustamonte, 412

U.S. 218, 226 (1973).  "The earlier, unwarned statement is a

7

factor in this total picture, but it does not presumptively taint the subsequent confession." Phillips, supra. The fact that the subsequent confession was preceded by adequate warnings is one of the circumstances to be considered. Elstad, supra.

Finally, while a cleansing warning is not a prerequisite to admissibility, an earlier unwarned statement and the lack of a cleansing warning before the subsequent statement are also part of the "totality of the circumstances." United States v. Lichtenhan, 40 MJ 466, 470 (CMA 1994), citing Phillips, supra. In this situation, where actual coercion, duress, or unlawful inducement was not involved in appellant's disclosures to the chaplain, our task is to review the totality of the circumstances de novo, and to determine as a matter of law whether appellant's subsequent confession to CID meets the following test:

> Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

Ford, supra at 451, quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961).

## ANALYSIS

We need not decide whether appellant's confession to CID was presumptively tainted, because we hold that it was

8

involuntary. Appellant went to the chaplain for help. Instead, he was advised that Army Regulations and the Family Advocacy Center rules mandated that the chaplain "turn him in" and reveal his confession. Chaplain S revealed appellant's confidences, in violation of the privilege protected by Mil.R.Evid. 503 and Army Regulations, when he told SFC K that appellant was at the MP station to make a statement regarding his "improper relationship with his stepdaughter." When appellant was questioned by the CID agents, he was informed that he was suspected of indecent assault. 55 MJ at 623. Appellant was aware that only the chaplain could have been the source of this information, and that his confidences had been betrayed. Faced with this Hobson's choice of confessing to CID or having the chaplain reveal his confession to CID, he had little or no choice but to confess.

There was no cleansing warning given, but we cannot fault the CID agents for not providing appellant with a cleansing warning and an opportunity to consider whether the "cat was out of the bag." There is no indication in the record that they were aware of Chaplain S's threats to reveal appellant's confession, but they were aware of the nature of the offenses because of Chaplain S's disclosure to SFC K.

These facts provide too flimsy a foundation for us to conclude that appellant's confession was made voluntarily, of

his own free will and based upon a desire to confess his crimes to the police officials.  Stated succinctly, under these circumstances, we conclude that appellant's "will [was] overborne and his capacity for self-determination [was] critically impaired."  Thus, "the use of his confession offends due process." Columbe, supra at 602.

Appellant was seeking clerical help.  Instead of providing confidential counseling, the chaplain informed appellant that he was obliged to report appellant's action and thus, unknown to the chaplain, breach the "communications to clergy" privilege. At this point, the chaplain was acting outside his responsibilities as a chaplain, and he was acting solely as an Army officer.  As such, he was required to provide an Article 31 warning before further questioning.  Although CID advised appellant of his rights, the chaplain had made it clear that if he invoked his rights, the chaplain would reveal his confession. Under these facts, we hold that the Government did not carry its burden of establishing that appellant's confession was voluntary.  See United States v. Bubonics, 45 MJ at 96; United States v. Martinez, 38 MJ 82, 86-87 (CMA 1993).  Accordingly, we must reverse.

### CONCLUSION

The decision of the United States Army Court of Criminal Appeals is reversed.  The findings of guilty and sentence are

set aside.  The record of trial is returned to the Judge

Advocate General of the Army.  A rehearing may be ordered.

United States v. Benner, No. 01-0827/AR

CRAWFORD, Chief Judge (dissenting):

Because the majority misreads the facts of this case, rejects the military judge's special findings of fact without declaring them clearly erroneous, and misapplies the law relating to the voluntariness of confessions, as well as to the application of the exclusionary rule to evidentiary privileges,[1] I respectfully dissent.

First, the facts ineluctably lead me to but one conclusion -- the impetus for appellant's confessions was his wife, not misstatements by Chaplain S. Both appellant at trial and the Army Court of Criminal Appeals agree with me. United States v. Benner, 55 MJ 621, 623-24 (Army Ct. Crim. App. 2001).

Second, the Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself nor be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. Additionally, Article 31(d), Uniform Code of Military Justice, 10 USC § 831(d), prohibits the admission of any statement into evidence that is "obtained ... through the use of coercion, unlawful influence, or unlawful inducement...." Both require the accused's confession to be voluntary in order to be admissible into evidence. Dickerson v. United States, 530 U.S. 428, 433

---

[1] The exclusionary rule does not apply to a violation of a general regulation. See, e.g., United States v. Caceres, 440 U.S. 741 (1979); United States v. Allen, 53 MJ 402 (2000).

(2000); see also United States v. Raymond, 38 MJ 136 (CMA 1993)(discussing the history of Article 31).

The issue in this case is whether appellant's confession was voluntary.  The waiver of one's right against self-incrimination set forth in Miranda v. Arizona, 384 U.S. 436 (1966), and Article 31 must be the "product of a free and deliberate choice rather than intimidation, coercion, or deception."  Moran v. Burbine, 475 U.S. 412, 421 (1986); see United States v. Harvey, 37 MJ 140 (CMA 1993); Mil.R.Evid. 304(c)(3), Manual for Courts-Martial, United States (2000 ed.). Voluntariness is measured in a number of ways.  In the final analysis, it is the "totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation" -- that answers the question of voluntariness.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Finally, neither state nor federal courts have applied the exclusionary rule to evidentiary privileges, let alone to evidence derived from evidentiary privileges.[2]  "Whatever [the] origins [of the evidentiary privileges], these exceptions to the demand for every man's evidence are not lightly created nor

---

[2] United States v. Seiber, 12 USCMA 520, 523, 31 CMR 106, 109 (1961)(the violation of a privilege has no applicability to extra-judicial occurrences); United States v. Squillacote, 221 F.3d 542, 559-61 (4th Cir. 2000); State v. Sandini, 395 So.2d 1178 (Fla. App. 1981); People v. Burnidge, 687 N.E.2d 813 (Ill. 1997); Chase v. State, 706 A.2d 613 (Md. App. 1998); see also United States v. Boffa, 513 F.Supp. 517 (D.Del. 1981).

2

expansively construed, for they are in derogation of the search for the truth." United States v. Nixon, 418 U.S. 683, 710 (1974). Disclosure of evidence, rather than the suppression of evidence, promotes truthfinding, and the evidentiary privileges should be strictly confined and not expansively interpreted.

FACTS

Several facts were not contested at trial:

(1) Appellant's date of birth is June 20, 1973, and he has a GT score of 105.

(2) Ms. Benner, her daughter (the victim) from a previous relationship, and son from her marriage to appellant arrived in Babenhausen, Germany, in March 1998.

(3) Ms. Benner was hospitalized in May 1998. It was during this hospitalization that appellant committed sodomy and committed indecent acts on the child.

(4) Appellant admitted coming forward after discussing with his wife what he did to his stepdaughter and realizing that he needed help. His wife was thinking about leaving him and returning to the United States. Ms. Benner and her children subsequently left Germany.

(5) Appellant's wife did not report him "because she wanted to see whether [appellant] would take responsibility for his actions and report [the incident] himself."

United States v. Benner, No. 01-0827/AR

The judge made various findings of fact, which we are bound to accept unless clearly erroneous.  See, e.g., United States v. Hollis, 57 MJ 74, 79 (2002).  They are:

(1) Appellant met with Chaplain S in June 1998 concerning assistance in getting a compassionate reassignment to the Fort Sill area (the location to which Ms. Benner had returned). Military Judge's Findings, App. Ex. X, ¶ e.

(2) The next time appellant met with Chaplain S was Sunday, September 20, 1998.  At this session, he was sobbing and "told Chaplain [S] that he had had an improper relationship with his stepdaughter."  No details of this improper relationship were revealed.  Chaplain S informed appellant that he would probably have to report this possible child sexual abuse to military authorities, but would need to confirm his reporting responsibilities the following day.  Id. at ¶ h.

(3)  On Monday, September 21, Chaplain S called Family Advocacy personnel, who advised him that he was required to report child sexual abuse.  Chaplain S then informed appellant that he would have to report him, but that he "hoped [appellant] would take the responsibility for his actions and report himself."  Thereafter, appellant and Chaplain S engaged in a detailed discussion concerning the acts appellant committed with his stepdaughter.  Id. at ¶ i.

(4)  During this session, lasting approximately 20-30 minutes, [appellant] told Chaplain [S] some, but not

4

> all, of the details concerning the acts....  [Appellant]
> made the decision to tell Chaplain [S] about the details
> of the acts, despite the fact that Chaplain [S] had told
> [appellant] that Chaplain [S] had an obligation to
> report to authorities.

Id. at ¶ j.

(5)  Chaplain S informed appellant "that it would be best

for him as a person" to confess and that Chaplain S would

accompany him to the military police station for moral support.

Appellant

> was hesitant to go to the Military Police Station and
> confess, but after further discussion, he agreed that
> it would be better if he confessed right away.  He and
> Chaplain [S] agreed that making a confession would be
> the best way for [appellant] to get the forgiveness of
> others and to help [appellant] forgive himself.
> Chaplain [S's] prompting of [appellant] to confess was
> based upon his observation of [appellant] as a soul in
> torment....  Chaplain [S's] actions and recommenda-
> tions were based upon his desire as a chaplain to help
> [appellant] through his emotional and spiritual
> crisis.

Id. at ¶ k.

(6)  Appellant

> made the independent decision to go to the Military
> Police Station and make a formal confession to the
> Military Police because he thought it would be the best
> thing for him to do.  One of the factors in his decision
> was that Chaplain [S] had told [him] that Chaplain [S]
> had a duty to report the improper relationship....
> [T]he primary reason for [appellant's] decision to
> confess to the Military Police was that [appellant]
> believed it would help [him] with the torment that he
> was going through.  His decision to confess to the
> Military Police was not the result of [him] submitting
> to Chaplain [S] or Chaplain [S's] position as a captain
> in the United States Army.  [Appellant] knew at the time
> that Chaplain [S] was not ordering him to confess.  ...
> [T]he primary motivation for his decision to confess to

the Military Police was not some fear that Chaplain [S] would report the matter.

Id. at ¶ l.

(7)  [B]y his course of conduct -- deciding that he should confess to the Military Police, deciding to go to the MP station, deciding that he wanted Chaplain [S] to accompany him for moral support, and acquiescing to Chaplain [S] telling the MP Station Commander why they were there -- [appellant] consented to Chaplain [S] divulging to the MP Station Commander matters which Chaplain [S] had learned of during a priest-penitent conversation.

Id. at ¶ n.

(8)  Chaplain [S] went out front and sat with [appellant] for approximately 10 minutes.... [Appellant] was left in the MP station alone. [There was] no evidence that there was any physical or moral restraint placed upon [appellant] to remain at the MP station.... [Appellant] was free to leave the MP Station at any time during this wait.... [Appellant] waited at the MP Station for over an hour before the CID agents arrived.... [Appellant] voluntarily waited for the CID agents to arrive....

Id. at ¶ p.

(9)  [The CID agent] was not aware of any of the specifics of the case.... He was only told by SFC King that there was a soldier who wanted to discuss a sexual assault of some kind.... [The CID agent] did not know at the time that [appellant] had made prior incriminating admissions to anyone. [Appellant] did not tell [the CID agent] that he had made prior incriminating admissions to anyone.

Id. at ¶ q.

(10) In filling out the rights advisement ..., [appellant] hesitated when he came to the right to counsel. He was obviously considering whether or not he wanted to have counsel.... However, [appellant] took his time, considered his right to counsel, and he then waived his right to counsel. [Appellant] was fully aware of his rights to counsel and against self-incrimination.... [T]he decision by [appellant] to waive his rights and submit to an

6

interview with the CID was an informed and voluntary decision made of his own free will.

Id. at ¶ r.

(11) Appellant's confession was "in his own handwriting" and was made "while he was left alone in the office." Appellant "was aware of what he was doing,... was not sleep-deprived" to any extent that would have affected adversely his mental processes, and the CID agents "in no way, shape, or form coerced or induced the confession." Id. at ¶ s.

At trial, appellant's wife testified during sentencing that she confronted her husband with the victim's allegations shortly after returning from the hospital and appellant did not deny the child's accusation. Appellant's unsworn statement at sentencing revealed that he was 25 years old and had spent 7 years in the United States Army. In reading from a prepared statement, appellant said:

> I failed as a father...[Sobbing]...and didn't deny anything when confronted about what happened. I know I needed to get help in order to live my life correctly. My wife and I briefly talked about it and agreed that I would get help.
>
> * * *
>
> The day after the incident occurred, I sat down with Maria and started crying. I explained to her that what I did was wrong and not to let anyone do that to her again.
>
> Since that day I've done all that I can do to make things right. I looked for help on my own. And when that failed, I went to the chaplain for help. He convinced me that the best thing to do was to turn myself in, and the next day I did so.

7

I pled guilty here because...excuse me...I pled guilty here today because I was wrong.  And it [sic] there was anything else I could do to show you how terrible I feel, I would do so.

DISCUSSION

Voluntariness of a confession is a question of law subject to our de novo review.  Arizona v. Fulminante, 499 U.S. 279, 287 (1991).  Any special findings of fact are the basis for reviewing the question of voluntariness and are binding on this Court unless those findings are clearly erroneous.  United States v. Ford, 51 MJ 445, 451 (1999).

In reviewing the totality of the circumstances, we do not presume that appellant's confession to the chaplain tainted his later voluntary statement to the CID agents.  See United States v. Norfleet, 36 MJ 129, 131 (CMA 1992).  The presumption of taint arises after a confession is obtained due to "actual coercion, duress, or inducement."  Ford, 51 MJ at 450, quoting United States v. Phillips, 32 MJ 76, 79 (CMA 1991).  Here, there was no actual coercion of appellant by Chaplain S.  "There is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a 'guilty secret' freely given in response to an unwarned but non-coercive question...."

8

Oregon v. Elstad, 470 U.S. 298, 312 (1985); see United States v. Murphy, 39 MJ 486, 488 (CMA 1994).

In Elstad, the Supreme Court addressed an issue similar to that at hand.  There, the police officers who arrested Elstad in his home asked incriminating questions, and received incriminating responses thereto, without advising the suspect of his rights pursuant to Miranda.  However, at the police station, Elstad was given a proper rights advisement, waived those rights, and gave a full admission of his criminal activity.  The Supreme Court held:

> We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.  A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.  In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314; see United States v. Marquardt, 39 MJ 239 (CMA 1994).

The record shows that appellant was neither inexperienced nor immature.  He was of reasonable intelligence.  He voluntarily sought out Chaplain S on September 20 and without being questioned, confessed, in the hopes of reuniting his family (a process that started three months earlier when he asked Chaplain S for compassionate reassignment help).

9

Appellant's movement was not in any way restricted throughout this entire process. Specifically, if he had wanted to talk to an attorney after being advised on September 20 that the chaplain would have to report his sexual abuse to proper authorities, appellant could have done so. Instead, he returned to see the chaplain. His choice to bare his soul to the CID investigators after being warned of his rights was both rational and a voluntary exercise of appellant's free will. It certainly was not coerced.

We know that neither the Fifth Amendment nor Article 31 are concerned with moral or psychological pressures to confess unless, of course, such pressure is applied through actual physical or official coercion. See Elstad, supra; Rhode Island v. Innis, 446 U.S. 291, 303 (1980); Oregon v. Mathiason, 429 U.S. 492, 495-96 (1977); Raymond, 38 MJ at 140; United States v. Fisher, 21 USCMA 223, 44 CMR 277 (1972). As the Supreme Court said in Elstad: "This Court has never held that the psychological impact of voluntary disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." 470 U.S. at 312. Likewise, the Supreme Court "has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." Id. at 316; see California v. Beheler, 463 U.S. 1121, 1125-26 n.3 (1983); McMann v.

Richardson, 397 U.S. 759, 769 (1970).  The Supreme Court has refused to find that a defendant who confesses after being falsely told that his co-defendant had turned against him does so involuntarily.  See Frazier v. Cupp, 394 U.S. 731 (1969).

While appellant may have been under some stress because of his family's return to Oklahoma as a result of his criminal misconduct, there is no support in the record for the proposition that he was so distraught or otherwise emotionally traumatized so as not to be able to exercise his free will.  The facts, as they exist in the record of trial and as found by the military judge, do not support the majority's conclusion that appellant's will was overborne so as to produce an unreliable, involuntary confession.  The Government has clearly established that appellant exercised his free will when he chose to speak with the CID agents.

After accompanying appellant to the military police station, Chaplain S related to SFC K that appellant was present to make a statement about "an improper relationship with his stepdaughter that occurred while appellant's wife was in the hospital and appellant had been drinking alcohol.  Chaplain S did not provide any other details of appellant's misconduct to SFC K."  55 MJ at 623.  How the interrogating officials from CID decided to warn appellant of his Article 31 rights for "indecent assault" is unclear, but there is no evidence that the

11

interrogating officials used appellant's confession to Chaplain S, who departed the military police station ten minutes after escorting appellant there and fifty minutes prior to the arrival of the CID representatives. Accordingly, it makes no difference whether Chaplain S was acting in his clerical capacity or as an Army officer -- no cleansing warning was required.

If there is an individual who was betrayed in this case, it is the innocent four-year-old child victim of sexual abuse, appellant's stepdaughter. Appellant, ostensibly the nurturing stepfather, betrayed that role by sexually abusing his step-daughter while his wife was hospitalized. Now, because of the majority's misapplication of the facts and law, an eight-year old will again have to relive the nightmare, as she, along with the others to whom appellant may have confessed, will be called back into court to testify during the rehearing which will surely be ordered.

For all of the above reasons, I respectfully dissent.