UNITED STATES, Appellee,

v.

Corporal Lloyd K. O'ROURKE, United States Army, Appellant.

ARMY 9900492.

U.S. Army Court of Criminal Appeals.

29 Aug. 2002.

For Appellant: Captain Terri J. Erisman, JA (argued); Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA; Major Steven P. Haight, JA (on brief); Colonel Adele H. Odegard, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Captain Sean S. Park, JA (on supplemental brief); Major Imogene M. Jamison, JA.

For Appellee: Captain Janine P. Felsman, JA (argued); Colonel Steven T. Salata, JA; Lieutenant Colonel Margaret B. Baines, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Denise R. Lind, JA; Lieutenant Colonel Margaret B. Baines, JA (on supplemental brief).

Before WRIGHT, Chief Judge, CAIRNS, Senior Judge, and CHAPMAN, Appellate Military Judge.

OPINION OF THE COURT

CAIRNS, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of indecent acts with a child (two specifications) and false swearing, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The convening authority approved the sentence to a dishonorable discharge, confinement for sixty-six months, and reduction to the grade of Private E1.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, the appellant assigns two errors: (1) that the military judge erred in denying the trial defense counsel's motion to exclude inadmissible hearsay evidence; and (2) that the military judge erred by ruling that the appellant's confession was sufficiently corroborated to admit it into evidence. We hold that the military judge did not abuse his discretion in admitting the hearsay statements or the confession. We find, however, that the evidence is factually insufficient to support the finding of guilty of an indecent act as alleged in the Additional Charge and Specification.

FACTS

On 19 November 1998, a social services agency sponsored a play, entitled "Hugs and Kisses," at a public school attended by the appellant's six-year old stepdaughter, KL. The play was about "good touches and bad touches" and was presented to the entire student body of 375 to 380 students. The play was designed to educate children and to provide child victims an opportunity to discuss with an attending social worker any

inappropriate sexual touching to which they may have been subjected.

KL's first grade teacher, Ms. Jackson, monitored her class during the play. Ms. Jackson noticed that KL was "very focused on the performance, very intense, [and her] attention did not waiver during the performance." After the presentation, the performers solicited questions and comments, and KL raised her hand but was not called upon. Ms. Jackson was very surprised that KL had been so focused on the play and that she had raised her hand because those responses and actions were inconsistent with her normal classroom behavior and demeanor. She described KL as a "shy girl" whose typical behavior in class included being a little talkative, inattentive, and very reluctant to volunteer in class.

After returning to the classroom and during preparation to go outside to play, Ms. Jackson asked KL if she had a question about the play. KL responded, "No." Ms. Jackson then asked KL what she thought about the play, and KL responded that her "daddy touched [her] where he wasn't supposed to."

Ms. Jackson then took KL to Ms. Young, one of the social workers who was available to talk with children after the play. Ms. Young was qualified as a social worker with a degree in psychology and more than seven years' experience as a social worker. Her duties included child welfare services and child protective services.

Ms. Young introduced herself to KL and observed that KL was agitated, wringing her hands, and cautious. Ms. Young explained to KL that social workers are trained to "help families and help little children who might be in need of help." She told KL that social workers come into the schools to help those who want help, and that they also go into homes to render services "to help . . . if there's anything that we need to do so that we can try to prevent any further harm if there is any occurring in the home." After this explanation, Ms. Young felt assured that KL understood the role of social workers because KL was able to explain to Ms. Young her understanding of what social workers do.

Ms. Young asked KL what she thought about the play. KL responded that "Daddy Ken" had touched her in her "lower area and she pointed to the bikini area as [it was referred to] in the play." (The evidence showed that the appellant went by his middle name, Kenneth, or its shortened version, Ken.) KL told Ms. Young that Daddy Ken touched her on one occasion, sometime around her sixth birthday. KL further related that she reported the touching to her mother, who "told her to go tell her dad not to touch her there again." KL's mother then sent KL out to play in the park sô her mother and father could talk.

On 23 November 1998, four days after KL disclosed that Daddy Ken touched her, Ms. Young again talked to KL at her school. Special Agent (SA) Gonzalez, an investigator with the Army Criminal Investigation Command (CID), accompanied Ms. Young. At this second meeting, KL remembered Ms. Young and, in response to nonleading questions, repeated that "Daddy Ken" had touched her in her private parts. She related that it happened on one occasion, close in time to her sixth birthday, after playing a game of "chicken and eggs" with her friends.

Ms. Young then explained to KL that it is normal procedure to conduct a medical examination. When Ms. Young explained that the examination was similar to a regular yearly medical check-up, KL agreed. Ms. Young further explained that she would not accompany KL to the hospital, but SA Gonzalez would take her and that KL would meet with her parents later. Special Agent Gonzalez took KL to the clinic, where they met with Dr. Limbo–Perez and Ms. Porter, a Fort Lee social worker.

Doctor Limbo–Perez examined KL in the presence of Ms. Porter. During the medical examination, she asked KL if she had been touched in her private area. KL told the doctor that she had. Although Dr. Limbo–Perez could not recall precisely whom KL said had touched her, Dr. Limbo–Perez testified, "I got the impression it was a daddy but I don't know—I sort of assumed but I did not ask for a specific name. It was somebody she lived with." Ms. Porter testified that, at some point during the medical exami-

nation, she asked KL to whom she was referring when she said "dad," and KL answered, "Ken."

Later the same day, KL was taken to the CID office where the appellant and his wife were to be interviewed. After obtaining a rights waiver, SA Gonzalez interviewed the appellant. The appellant made a sworn statement claiming that the allegations were false and that he had not touched KL inappropriately.

After completing their investigative work, and while CID personnel were conferring about how to protect KL that evening, they observed KL's mother—appellant's wife—talking to KL. This occurred even though investigators had arranged to keep the family separated during the interview process so as to avoid collusion or improper influence. Shortly after KL and her mother were again separated, KL told an investigator that she had made a mistake—it was Daddy Tommy,[1] not Daddy Ken, who had touched her. From this point forward, aside from one notable exception during her trial testimony, KL's story was that Daddy Tommy touched her inappropriately, not Daddy Ken.

On 3 December 1998, the appellant was readvised of his rights and interviewed again by SA Gonzalez. During this interview, appellant confessed that his earlier sworn denial of sexual abuse of KL was false. He admitted that when KL first came to live with the appellant and his wife, he was sexually aroused by KL. He made detailed admissions about the nature of his sexual attraction to KL, which included sexual fantasies about KL while bathing and touching her naked body, back, buttocks, and inner thighs. He confessed to digitally penetrating KL's vagina during one such bath, and this conduct constituted the indecent act alleged in Specification 3 of the Charge of which he was convicted.

In the Specification of the Additional Charge, the government charged another indecent act "by 'causing her vagina to fall on [his] face,' and by pulling 'her down along [his] face,' and by smelling her vagina, with intent to arouse and gratify the sexual desires of the [appellant]." The evidence supporting this specification was the appellant's admission to CID that "[o]ne time [KL] layed [sic] on [his] forehead, facing [his] feet and she fell face first on [his] stomach, causing her vagina to fall on [his] face. [He] pulled her down along [his] face. She was wearing clothes. It got [him] sexually excited." In an effort to corroborate this statement, the government introduced another statement made by the appellant to Ms. Porter the day after he rendered his confessional statement to CID.

On 4 December 1998, a nurse-practitioner, Ms. Gurney, examined KL at the Medical College of Virginia.[2] In a stipulation of expected testimony, Ms. Gurney said that her examination of KL revealed physical evidence of injury to KL's vagina and anus in the form of tissue that was healing as a result of abrasive injury. Her findings were "specific [for] trauma to the vagina and anus not caused by natural bodily functions." During the medical examination, KL told Ms. Gurney that she had been touched in the vaginal area by her "foster Dad, Tommy ... with his hand."

At trial, KL's out-of-court statements to Ms. Jackson, Ms. Young, SA Gonzalez, Ms. Porter, and Dr. Limbo–Perez were admitted over defense hearsay objections. The military judge overruled the objections, finding they were admissible under the medical exception or the residual hearsay exception.

KL also testified at trial. Because of her tender years, she was a reluctant witness and unable to provide details about the allegations. During her testimony, KL recalled that the play at school was about "this little girl ... who got touched by her dad and she was feeling really sad." KL testified that it made her "a little sad" too. The trial counsel then asked:

Q. And why did it make you feel sad?

1. Daddy Tommy was KL's uncle.

2. Because Dr. Limbo–Perez did not feel medically qualified to perform an internal gynecological examination, she referred KL to the Medical College of Virginia for that purpose.

A. Because I remembered about the thing.

Q. What thing did you remember about?

A. I don't remember that much.

Q. Can you tell me a little bit about it?

A. I will think about it.

After asking a series of "friendly" questions, the trial counsel returned to the topic of "the thing":

Q. I want to ask you again about the play, okay. Can you—[Y]ou said that you would think about whether you can say what made you sad[;] what it made you think about. Can you tell me?

A. Well, it's part of that thing that Ken did—I mean Tommy did[,] and it really upset me a little.

Q. Do you remember what the thing was?

A. Not much.

Q. Is it kind of embarrassing to talk about it?

A. Yes.

Q. What sort of thing was it?

A. I forgot a little bit.

Q. Did you forget a little bit or did you forget completely?

A. Completely.

(R. at 224–26.)

## LAW

### a. Factual Sufficiency

Under our Article 66c, UCMJ, responsibility, we must review all contested cases for factual sufficiency. The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we as members of this court are ourselves "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

### b. Admissibility of Hearsay Statements

Military Rule of Evidence [hereinafter Mil. R. Evid.] 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the rule against hearsay, even though the declarant is available as a witness. Statements offered under the medical treatment exception must satisfy a two-pronged test: "[F]irst the statements must be made for the purposes of 'medical diagnosis or treatment'; and second, the patient must make the statement 'with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought.' " *United States v. Edens,* 31 M.J. 267, 269 (C.M.A. 1990) (quoting *United States v. Deland,* 22 M.J. 70, 75 (C.M.A.1986)). Under proper circumstances, "statements made to psychologists, social workers, and other health care professionals" may be included under Mil. R. Evid. 803(4). *United States v. Morgan,* 40 M.J. 405, 408 (C.M.A.1994). Although there may be some relaxation of the quantum of proof required in situations where a child is being treated, the facts still must support a finding that both prongs of the test are met. *See United States v. Williamson,* 26 M.J. 115 (C.M.A.1988).

In addition to the enumerated exceptions to the hearsay rule, certain other statements are admissible under the residual hearsay exception. Mil. R. Evid. 803(24).[3] The residual hearsay exception provides the following:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness [is not excluded by the hearsay rule], if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

3. The residual exceptions to the hearsay rule previously codified at Mil. R. Evid. 803(24) and 804(b)(5) have since been codified at Mil. R. Evid. 807.

Thus, the rule requires a showing of materiality, necessity, and reliability. *See United States v. Kelley,* 45 M.J. 275 (1996).

With regard to the reliability prong, the Supreme Court has summarized a nonexclusive list of factors relevant to evaluating the reliability of out-of-court statements made by child victims of sexual abuse. These factors include spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. *Idaho v. Wright,* 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

### c. Corroboration of Confessions and Admissions

Confessions and admissions may be considered as evidence against an accused only if the essential facts are sufficiently corroborated to support an inference of their truth. The rules on corroboration of confessions and admissions are codified in Mil. R. Evid. 304(g).[4]

Our superior court concisely summarized the corroboration rules in *United States v. Baldwin,* 54 M.J. 464, 465 (2001) (quoting *United States v. Cottrill,* 45 M.J. 485, 489 (1997)), as follows:

> The corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the *corpus delicti* of the confessed offense. *See United States v. Maio,* 34 MJ 215, 218 (CMA 1992). Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted. *Id.; United States v. Rounds,* 30 MJ 76, 80 (CMA 1990). Moreover, while reliability of the essential facts must be established, it need not be done beyond a reasonable doubt or by a preponderance of the evidence. *Maio, supra* at 218 n. 1; *see United States v. Melvin,* 26 MJ 145, 146 (CMA 1988) (quantum of corroboration needed "very slight"); *United States v. Yeoman,* 25 MJ 1, 4 (1987) (corroboration needed "slight"). We have closely analyzed the evidence in every case before us to determine whether a confession has been sufficiently corroborated. *See Maio, supra* at 218–19; *see generally* C.A. Wright, *Federal Practice and Procedure* § 414 (1982).

"The purpose of the rule requiring corroboration of confessions by independent evidence is to establish the trustworthiness or reliability of the confession so as to prevent convictions based on false confessions." *United States v. Egan,* 53 M.J. 570, 577 (Army Ct.Crim.App.2000) (citing *United States v. Yeoman,* 25 M.J. 1 (C.M.A.1987)). When a crime for which an accused confesses results in physical injury to a victim, the corroboration requirement is satisfied by proof of the injury. *See United Sates v. Yates,* 24 M.J. 114 (C.M.A.1987).

### d. Standard of Review

We review the ruling of a military judge "on admissibility of evidence for 'clear abuse

4. Pertinent portions of Mil. R. Evid. 304(g) are as follows:

> *Corroboration.* An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence. Corroboration is not required for a statement made by the accused before the court by which the accused is being tried, for statements made prior to or contemporaneously with the act, or for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.
>
> (1) *Quantum of evidence needed.* The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.

of discretion.'" *United States v. Schlamer,* 52 M.J. 80, 84 (1999) (quoting *United States v. Johnson,* 46 M.J. 8, 10 (1997)); *United States v. Kelley,* 45 M.J. 275, 279–80 (1996). To reverse a military judge's decision to admit evidence, we must find that the decision was "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." [5] In conducting our review, the military judge's findings of fact are to be upheld on appeal unless they are "clearly erroneous," whereas his conclusions of law are reviewed *de novo.*[6]

Similarly, we review a military judge's ruling that a confession or admission is adequately corroborated for abuse of discretion. *See generally United States v. Ayala,* 43 M.J. 296 (1995); *United States v. Benner,* 55 M.J. 621 (Army Ct.Crim.App.2001).

## DISCUSSION

### a. Factual Sufficiency

█ We first address the factual sufficiency of the Additional Charge alleging an indecent act "by 'causing [KL's] vagina to fall on [appellant's] face,' and by pulling 'her down along [his] face,' and by smelling her vagina, with intent to arouse and gratify the sexual desires of the [appellant]." The appellant admitted in his statement to CID that on one occasion while he was wrestling with KL, she laid on his forehead facing his feet and fell on his stomach, thus "causing her vagina to fall on [his] face." He further stated, "I pulled her down along my face. She was wearing clothes. It got me sexually excited." To corroborate this admission, the government offered another statement made by the appellant to Ms. Porter. Ms. Porter testified that the "[appellant] said one time when he was *playing* with [KL], he had her—and she slid down over his head and her—I don't—her vagina must have touched his face or something like that." (Emphasis added). The appellant told her that "he became excited with that also and—and went into another room to masturbate."

Assuming for analysis purposes only that the appellant's statement to CID was properly corroborated by his subsequent statement to Ms. Porter,[7] we are not persuaded beyond a reasonable doubt that the appellant's acts with KL were either indecent or were committed with the "intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both." *See Manual for Courts-Martial, United States* (2000 ed.), para. 87(b). Nothing in the appellant's statements prove that the appellant did anything to cause KL's vagina to come into contact with his body, or once there was contact, that the appellant committed an act that was indecent. The government's evidence fails to prove directly or circumstantially that the appellant smelled KL's vagina, as alleged, or that any of his conduct was with the intent to gratify his sexual desires.

In fact, the evidence supports a conclusion that, in this instance, the contact between KL and the appellant occurred accidentally during innocent play and that the appellant committed no act with the intent to gratify his sexual desires. At most, the evidence demonstrates that as a result of his innocent contact with KL, the appellant became sexually aroused. Despite the appellant's substantial admissions regarding other indecent acts with KL, we cannot conclude beyond a reasonable doubt that the acts as alleged in the Additional Charge amounted to indecent acts. Accordingly, we will dismiss the Additional Charge and its Specification in our decretal paragraph. *See* UCMJ art. 66(c).

### b. Hearsay Statements

█ The military judge admitted KL's statement to Ms. Jackson under the residual hearsay exception. In assessing the reliability prong, the military judge found facts sup-

5. *United States v. McElhaney,* 54 M.J. 120, 132 (2000) (citations omitted); *United States v. Johnson,* 49 M.J. 467, 473 (1998) (citations omitted); *United States v. Travers,* 25 M.J. 61, 62 (C.M.A. 1987) (citation omitted).

6. *United States v. Meeks,* 41 M.J. 150, 161 (C.M.A.1994) (quoting *United States v. Davis,* 36 M.J. 337, 340 (C.M.A.1993)).

7. After oral argument, the court conducted an in-chambers hearing and encouraged the parties to submit supplemental briefs on the issue of whether the appellant's statement to Ms. Porter could be used to corroborate his confession to CID. Our conclusion that the evidence is factually insufficient moots this issue.

porting the trustworthiness of KL's statement. He relied on the facts that KL watched the play intently and raised her hand soon after it concluded. This conduct was in contrast to her normal inattentiveness and reluctance to volunteer. When she was not called upon, but was asked an open-ended question about the play a short time later, KL volunteered that her daddy touched her inappropriately. The military judge found that there was no evidence that KL had a motive to fabricate an allegation against the appellant. These findings are supported by the evidence, and we adopt them as our own.

The military judge accurately summarized the requirements for admissibility under the residual hearsay exception, and concluded KL's statement to Ms. Jackson qualified. We agree. As for the reliability of KL's statement, we agree that it was obviously voluntary and spontaneous within the context of her response to the play. There was not a hint of evidence that KL had a motive to fabricate. In fact, there was evidence that she was sad to be separated from the appellant after the investigation revealed his indecent conduct. The necessity prong was established by KL's inability or unwillingness to testify about the details of the abuse she endured. KL's out-of-court statements were also necessary and more probative on the issue of the identity of her abuser than any other evidence that the proponent could reasonably procure. *See United States v. Ureta*, 44 M.J. 290, 296–97 (1996); *United States v. Giambra*, 33 M.J. 331, 334 (1991). Finally, as the materiality of KL's statements cannot be denied, we are satisfied that the military judge did not abuse his discretion and properly admitted the statement.

The military judge admitted KL's statements to Ms. Young, Dr. Limbo–Perez, Ms. Porter, and SA Gonzalez[8] under the medical treatment exception to the rule against hearsay. *See generally United States v. Haner*, 49 M.J. 72 (1998). Alternatively, he analyzed and admitted these statements under the residual exception. The military judge accurately summarized the two prongs of the medical treatment exception, and although we do not believe the military judge was required to consider their admissibility under the residual hearsay exception, he correctly applied the law to factual findings that were supported by the evidence.

As for the medical treatment exception, the military judge's findings of fact were supported by the evidence, and we adopt them as our own. Ms. Young explained to KL that social workers provide services closely akin to medical treatment. KL understood the social worker's role, as evidenced by her response to Ms. Young. KL evidenced her desire to seek help by raising her hand after the play. Additionally, her voluntary responses to open-ended questions about the play support the military judge's finding that KL anticipated that she would receive help from Ms. Young. KL's second statement to Ms. Young, as witnessed by SA Gonzalez, likewise satisfied the two prongs of the medical treatment exception.

KL's statements to Dr. Limbo–Perez during her medical examination were also properly admitted under the medical treatment exception. KL knew she was being examined by a medical doctor, and that the examination was similar to a periodic check-up. KL submitted to the examination after talking to Ms. Young about the problems with Daddy Ken's inappropriate touching, and she undoubtedly sought assistance under the circumstances. Ms. Porter, who was present during the examination, likewise participated in the examination both for treatment and investigative purposes. Seen through KL's eyes, Ms. Porter was part of the help she could expect to receive from the medical treatment. Given the evidence and the comprehensive analysis of the military judge, we are easily satisfied that the military judge did not abuse his discretion in admitting KL's out-of-court statements.

8. As a witness to Ms. Young's second discussion with KL, SA Gonzalez testified to KL's out-of-court statement that Daddy Ken touched her private parts. This statement came into evidence under the military judge's ruling that KL's statement to Ms. Young qualified as a statement made for medical treatment.

### c. Corroboration of Appellant's Confession

The appellant admitted to penetrating KL's vagina with his finger while giving her a bath. Contrary to his admissions regarding the Additional Charge discussed above, the context of the appellant's confession to the digital penetration included more than sufficient evidence to support his intent to satisfy his sexual desires. Specifically, the appellant admitted that every time he bathed KL, he became aroused sexually by watching her naked body, touching her naked body, and rubbing her inner thighs and buttocks. The only issue is whether the appellant's confession to the indecent act of penetrating KL's vagina with his finger was sufficiently corroborated to support the truth of his statement.

Ms. Gurney's gynecological examination of KL revealed evidence of abrasive injury to KL's vagina. Her findings were specific for trauma not caused by natural bodily functions. Even though the appellant did not specifically admit to causing KL's injury, we are satisfied that Ms. Gurney's testimony alone adequately corroborates the appellant's confession. *Yates,* 24 M.J. at 116. In addition to Ms. Gurney's testimony, KL's statements to Ms. Jackson, Ms. Young, SA Gonzalez, Dr. Limbo-Perez, and Ms. Porter also serve to corroborate the appellant's confession.

The appellate defense counsel argues that KL's statements do not dovetail with the appellant's confession to his digital penetration of KL. We believe, however, that her statements that Daddy Ken touched her in the bikini area provided additional corroboration of his indecent act, over-and-above the physical evidence of injury. KL's statements are not replete with detail. Certainly it is understandable that a six-year-old child might have difficulty providing details and specifics surrounding such abuse. While we concede that an argument may be made that the touching to which KL referred did not occur during a bath, we also must acknowledge that her statements do not exclude that possibility. At the very least, however, her statements confirm the appellant's detailed admissions that he sexually exploited his stepdaughter, and in that regard her statements support the truth of his admissions. Accordingly, we are satisfied that the purpose of the corroboration rule—to prevent convictions based on false confessions—has been satisfied in this case.

We have considered the matters submitted personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find they do not merit relief.

## DECISION

The findings of guilty of the Additional Charge and its Specification are set aside and the Additional Charge and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for fifty-four months, and reduction to the grade of Private E1.

Chief Judge WRIGHT and Judge CHAPMAN concur.